IN THE UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RUBA, LLC and MOHAMMED ALMUTTAN | ) ) ) |
| Plaintiffs, | ) ) Cause No. |
| v. | ) ) ) Div. |
| CITY OF COUNTRY CLUB HILLS | ) ) |
| and | ) ) |
| BENDER MCKINNEY in his official capacity as Mayor, DOUGLAS COONCE, in his official capacity as Alderman, DONALD FRASER, in his official capacity as Alderman, TIAWANA THOMPSON, in her official capacity as Alderwoman, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, DECLARATORY JUDGMENT, MANDAMUS AND DAMAGES**

Plaintiffs Ruba, LLC ("Ruba") and its sole member Mohammed Almuttan ("Almuttan") state as follows:

**INTRODUCTION**

Mohammed Almuttan and his brothers have chosen Country Club Hills, Missouri as a place where they want to own and operate their family businesses. They currently own a grocery store there – Mally's Supermarket. That business has been open for more than five years. Two years ago, they purchased a piece of vacant property from the City of Country Club Hills, and now they are just a couple months away from opening a new 24-hour gas station and convenience store at the location. Last year, Mr. Almuttan acquired the lease for a closed 7-11

store, and put in almost $400,000 in renovations and equipment into the building to open a new laundromat.  In total, Mr. Almuttan and his family have invested almost $2 million into their business at a time when no one else wanted to invest in the City of Country Club Hills.

Apparently, however, not everyone in the government at the City of Country Club Hills is glad that Mr. Almuttan and his family have chosen to join their community. The Mayor – Bender McKinney – and several of the City's Aldermen have denied a business license for the laundromat for more than two months without any legal justification for doing so.  They have done so because Mr. Almuttan and his family are from Palestine and are practicing Muslims.  Based upon testimony from the former Chief of Police and an Alderwoman for the City of Country Club Hills, the Mayor has called Mr. Almuttan and his family "trash" and "illegals", suggested "those people should go home", and "we do not want them in our neighborhood".  Mayor McKinney vowed to do whatever it took to run them out of town.

This litigation is brought pursuant to 42 U.S.C. §§1981, 1983 and 1988, and the XIV Amendment to the United States Constitution, as well as under the Missouri Constitution.

## FACTS

1. Ruba is a Missouri limited liability company with its principal place of business located within the County of St. Louis, Missouri.  Ruba will operate the laundromat located at 7455 West Florissant Road, in the City of Country Club Hills, Missouri (the "Laundromat Business").  Almuttan is the sole member of Ruba.

2. The City of Country Club Hills (the "City") is a fourth-class city, with a population according to the 2010 census of 1,274 residents.

3. Bender McKinney is the Mayor of the City ("Mayor McKinney").

4.      Donald Fraser, Douglas Coonce and Tiawana Thompson are three of the four aldermen for the City (the "Aldermen").  Each of the named Aldermen participated in, or endorsed, all the acts set forth in the Complaint.

5.      Almuttan is of Palestinian descent and is a Muslim.  Almuttan and his brothers, who are also of Palestinian descent and practicing Muslims (the "Mutan Family"), own and operate Mally's Supermarket in the City, and they are constructing a new gas station and convenience store in the City.

6.      The Mutan Family and their businesses have spent more than $2 million on redeveloping properties and new construction in the City.  This includes the purchase of a vacant parcel of property from the City at a cost of over $125,000.  This has occurred during a time when other business have been closing and leaving the City.

7.      Beginning in 2016, Ruba and the Mutan Family began to renovate the building at 7455 West Florissant Road, in the City (the "Laundromat Building").  The Laundromat Building was formerly a 7-11 Store, which Ruba now leases.  The Laundromat Building has been completely renovated and equipment installed to operate a new laundromat.  Ruba has spent over $400,000 to get the Laundromat Business ready to open.

8.      Because the City is so small and does not have the capacity or ability, the City has delegated the responsibility for performing building inspections to St. Louis County, Missouri.  The Laundromat Building has passed all inspections by St. Louis County, and therefore, is entitled to an occupancy permit from the City.

9.      Chapter 605 of the City's Ordinances covers "Business Regulations".  Section 605.020 states as follows:

> Every person coming within the foregoing definition of merchant shall, before doing or offering to do business as such, shall procure from the

>City Clerk a license therefor in conformity with the provisions of this Chapter.

The only two requirements for the issuance of a business license in the City are the payment of a license fee (§605.050) and the deposit of a bond to cover potential inventory and sales taxes (§605.060).  A copy of Chapter 605 of the City Ordinances is attached hereto as <u>Exhibit A</u>.

10. Since December 2016, Ruba and Almuttan have repeatedly applied for, and been denied the issuance of, a business license from the City for the Laundromat Business.  Mayor McKinney has refused to issue the business license to open the Laundromat Business, stating that the proposed business did not meet with his approval or the approval of Alderman Fraser.  Both Mayor McKinney and Alderman Fraser have repeatedly required that they be allowed to "inspect" the Laundromat Building and the Laundromat Business, even though there is no authority in the Ordinances for the Mayor or the Aldermen to perform inspections on commercial properties.

11. During and following the various "inspections" performed by Mayor McKinney and Alderman Fraser, Ruba has been given "to do" lists that Mayor McKinney insisted be completed before a business license would be issued to the Laundromat Business.  The items on the lists ran the spectrum from requiring the Laundromat Business to offer "free Wi-Fi" service and "drop-off, pick-up" laundry service to its customers, to designating the exterior color of the building.  A copy of one list is attached hereto as <u>Exhibit B</u>.

12. Neither the City, the Mayor nor the Aldermen have any authority to add "conditions" to the issuance of a business license outside the two conditions set forth in the Ordinance.

13. The City, the Mayor and the Aldermen have repeatedly complained that operating the Laundromat Business as a laundromat only would not generate enough tax revenue for the

City because sales tax is not charged on revenue from washing machines and dryers. The City does charge a once-a-year tax on vending machines that Ruba has paid to the City. Despite this, the City, the Mayor and the Aldermen have told Ruba they want Ruba to open a business that has more retail operations at the location so sales tax could be collected by the City. The City, the Mayor and the Aldermen have refused to issue the business license until Ruba agrees to "sell" things at the Laundromat Business that would qualify for sales tax, thereby preventing them from operating only a laundromat.

14. In a further effort to prevent Ruba from operating its Laundromat Business, on January 11, 2017, the City attempted to pass a new ordinance that would restrict the hours of operation of businesses within the City to between 6:00 a.m. to 10:00 p.m. A copy of the proposed ordinance is attached as Exhibit C (the "Proposed Ordinance").

15. The intent of the proposed ordinance was to intentionally interfere with the Mutan Family and their businesses, which are the *only* businesses impacted by the Proposed Ordinance. Ruba presented signatures from 320 residents of the City opposing the Proposed Ordinance and stating that they were in favor of a grocery store and a new laundromat that would be conveniently open 24-hours a day. The Proposed Ordinance was tabled.

16. While continuing to illegally deny a business license to Ruba for the Laundromat Business, the City re-introduced the Proposed Ordinance on February 8, 2017, and it passed, thereby restricting the hours of operation for "new" businesses. Had the City issued a business license to Ruba as required during the prior two-month period, rather than illegally refusing to do so, the Laundromat Business would not be a *new* business subject to the ordinance.

17. The actions of the City, Mayor McKinney and the Aldermen have been motivated by an animus toward the Mutan Family based upon their national origin and religion.

18. In the fall of 2016, a property owner on West Florissant Avenue in the City was looking to sell his property. Mayor McKinney contacted the property owner and implored him not to sell to the Mutan Family, including Almuttan, saying they already owned too much property in the City. The individual sold the property to the Mutan Family anyway.

19. Mayor McKinney, as a former alderman and as the Mayor, made the following statement to the then Chief of Police for Country Club Hills, "You all allowed that trash [the Mutan Family] to come into Country Club Hills and open businesses, and now I am going to clean house." The reference of "trash" was clearly meant to describe Almuttan and his family as immigrant Muslims.

20. On another occasion, McKinney told the Chief of Police that Almuttan and his family were "illegals" and that the Country Club Hills Police Department was not doing anything about it. The Chief of Police explained to McKinney that the department had investigated the Mutan Family, had spent significant time in and around the business, and knew that in fact they were not "illegals" and that nothing illegal was taking place at the business.

21. In response, McKinney pressured the Chief of Police to instruct his officers to harass the Mutan Family grocery business and its customers. This included instructions to "sit" on their lot, visit and remain inside of the store for extended periods of time, all with the intended outcome of damaging the business. The Chief of Police refused to do this.

22. Mayor McKinney made similar remarks to the other aldermen for the City, including referring to the Mutan Family as "those people" and calling them "trash". He often said that "those people should go *home*, they don't belong here," and, "I don't want them in our neighborhood." Mayor McKinney repeatedly stated that he would "do whatever it took" to get rid of Almuttan, his family and their business.

23. The City, Mayor McKinney and the Aldermen, individually and in conspiracy with one another, have engaged in an ongoing pattern and practice of discrimination based upon the national origin and religion of the Mutan Family in violation of the United States Constitution, 42 U.S.C. § 1981, and the Missouri constitution. Similarly situated businesses that are not owned and operated by Palestinian Muslims have not been mistreated in the way that Ruba, Almuttan and the Mutan Family have been treated.

24. The Defendants' actions violate the equal protection and due process clauses of the XIV amendment to the United States Constitution, and the Mo. Const. Art. I §§2, 10, in that there is no substantial justification for allowing other businesses to obtain business licenses without conditions, but imposing arbitrary and capricious conditions on Plaintiffs.

25. This litigation is brought pursuant to 42 U.S.C. §§1981, 1983 and 1988, and the United States Constitution. Therefore, Plaintiffs are entitled to recover their reasonable attorneys' fees expenses, and costs incurred in bringing this action.

26. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that the Plaintiffs' relief necessarily depends upon resolution of a substantial question of federal law. Biscanin v. Merrill Lynch & Co., 407 F.3d 905, 906 (8th Cir. 2005).

27. This Court should exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, in that all the claims are part of the same case or controversy because they "derive from a common nucleus of operative fact." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007).

28. This Court also may decide this case under 28 U.S.C. § 2201, allowing for the Court to issue a declaratory judgment regarding the rights of the Parties to this case.

29. Venue is proper in this court in that all parties are residents of St. Louis County, Missouri and the actions of the Respondents occurred in St. Louis County, Missouri.

## **COUNT I –CLAIMS UNDER 42. U.S.C. §§ 1981, 1983 and 1988**

30. Plaintiffs incorporate herein by reference paragraphs 1-29 above.

31. Pursuant to 42 U.S.C. § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981 (West).

32. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985) quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

33. Pursuant to 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. §1983 (West).

34. "[I]n any §1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part not relevant here, by Daniels v. Williams, 474 U.S. 327, 330–331 (1986)).

35. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  See Gentry v. City of Lee's Summit, Mo., 10 F.3d 1340, 1342 (8th Cir. 1993).

36. The City, Mayor McKinney, and the Aldermen, acting under color of state in their official capacities, have knowingly acted with deliberate, intentional and reckless disregard for the rights of Plaintiffs under the U. S. Constitution and 42 U.S.C. § 1981 by targeting Plaintiffs for disparate and unequal treatment because of their national origin and religion.

37. Plaintiffs have been damaged and are entitled to recover compensatory and punitive damages, as well as attorneys' fees, expenses and costs pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter its final judgment and order of damages, in an amount to be determined at trial, including compensatory and punitive damages, awarding Plaintiffs their attorneys' fees, expenses and costs incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT II – CONSPIRACY TO VIOLATE RALTORS' RIGHTS

38. Plaintiffs incorporate herein by reference paragraphs 1-37 above.

39. Federal law, 42. U.S.C. §1985, states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985 (West).

40. The City, Mayor McKinney, and the Aldermen, acting under color of state in their official capacities, have knowingly acted, individually and in conspiracy with one another, with deliberate, intentional and reckless disregard for the rights of Plaintiffs under the U. S. Constitution and 42 U.S.C. § 1985 by targeting Plaintiffs for disparate and unequal treatment because of their national origin and religion.

41. The statements by Mayor McKinney were made in the presence of the other Aldermen, or were made known to the other Aldermen, and therefore, they participated in the illegal conduct.  The Aldermen failed to perform their duties as independent elected officials, thereby participating in the illegal conduct rather than protecting the rights of the Plaintiffs.

42. Plaintiffs have been damaged and are entitled to recover compensatory and punitive damages, as well as attorneys' fees, expenses and costs pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter its final judgment and order of damages, in an amount to be determined at trial, including compensatory and punitive damages, awarding Plaintiffs their attorneys' fees, expenses and costs incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT

43. Plaintiffs incorporate herein by reference paragraphs 1-43 above.

44. The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201

45. Because Defendants refuse to issue the business license for the Laundromat Business, there exists an actual, substantial, and presently existing controversy admitting of specific relief as distinguished from an advisory or hypothetical situation as to the enforceability of the City's Business Ordinances and the Proposed Ordinance.  Therefore, declaratory judgment is appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter its final judgment and order declaring the City has not authority to deny the issuance of a business license under Chapter 605 of the City's Ordinances, and does not have the authority to impose conditions not specifically set forth in Chapter 605 as a prerequisite for the issuance of a business license, for Plaintiffs' attorneys' fees, expenses and costs incurred herein, and for such other and further relief as this Court deems just and proper.

**COUNT IV – MANDAMUS**

46. Plaintiffs incorporate herein by reference paragraphs 1-44 above.

47. Mandamus is a discretionary writ under Missouri law, and there is no right to have the writ issued. State ex rel. Johnson v. Griffin, 945 S.W.2d 445, 446 (Mo. banc 1997) (citing State ex rel. Chassaing v. Mummert, 887 S.W.2d 573, 576 (Mo. banc 1994)).  Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced.  Id. The purpose of the writ is to execute, not adjudicate.  Id.  Mandamus is only appropriate to require the performance of a ministerial act.  State ex rel. Bunker Resource v. Dierker, 955 S.W.2d 931, 933 (Mo. banc 1997); Missouri Coalition v. Joint Comm. on Admin., 948 S.W.2d 125, 131 (Mo. banc 1997).

48. Ruba has a clear, unequivocal right to apply for a business license and receive a business license upon meeting the two requirements of Chapter 605 of the Ordinance.  The issuance of the business license is a ministerial duty.  The Defendants refuse to perform this ministerial duty, choosing instead to reject the business license solely upon the arbitrary, capricious and unconstitutional conditions they have imposed.

WHEREFORE, Plaintiffs respectfully request that this Court enter its final judgment and order requiring the City of Country Club Hills to issue a business license for the Laundromat Business, awarding Plaintiffs their attorneys' fees, expenses and costs incurred herein, and for such other and further relief as this Court deems just and proper,

**COUNT V – TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTION**

49. Plaintiffs incorporate herein by reference paragraphs 1-48 above.

50. Plaintiffs are also entitled to injunctive relief from this Court. To determine whether injunctive relief is warranted, the Court must balance the threat of irreparable harm to

movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest.  Dataphase Sys. v. C L Sys., 640 F.2d 109, 113–14 (8th Cir.1981) (en banc).  Injunctive relief is an extraordinary remedy, and the burden of establishing the propriety of such relief is on the movant.  Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir.2003) (citations omitted).  "The party seeking injunctive relief bears the burden of proving all the Dataphase factors." Id.

51.     The courts recognize that a cause of action for injunctive relief is permissible under 42 U.S.C. § 1983.

52.     Here, Plaintiffs have suffered illegal discrimination at the hands of Defendants.  They are absolutely entitled to receive the business license, yet Defendants have refused to issue it.  Instead, Mayor McKinney has continued his pattern and practice of illegal conduct.  Because Plaintiffs are entitled to the business license, issuing the business license is the status quo.  There is no irreparable harm in allowing the Laundromat Business to open.

53.     On the other hand, keeping the Laundromat Business closed will irreparably harm Plaintiffs because they have invested substantial sums of money that they cannot recover while closed, they risk losing customers to other businesses while closed, they could lose their lease if the Laundromat Business remains closed, and they will suffer reputation damage as the Laundromat Business sits empty.

54.     Plaintiffs have a very strong likelihood of success on the merits because the City's Ordinances mandate the issuance of a business licenses where, as here, the applicant has met the two simple criteria.  Moreover, the statements and actions of Mayor McKinney prove that the denial is based upon illegal factors of discrimination.

55. The public interest factor weighs in favor of granting the requested injunctive relief.  There is no reason to deny a business license for a laundromat that is needed and desired in the community.

56. Plaintiffs have no adequate at remedy to enforce their rights to a business license without restrictions on the hours of operation for the Laundromat Business.

WHEREFORE, Plaintiffs respectfully request that this Court enter its judgment and order of Temporary, Preliminary and Permanent Injunctive Relief:

a. prohibiting, until further order of this Court, the enforcement of any restriction on the hours of operation at the Laundromat Business;

b. prohibiting, until further order of this Court, Defendants from refusing to issue a business license for the Laundromat Business;

c. prohibiting, until further order of this Court, Defendants from denying a business license for the Laundromat Business;

d. prohibiting, until further notice of this Court, defendants from discriminating against Plaintiffs on the basis of national origin or religion; and

e. granting such other and further relief as this Court deems just and proper, including but not limited an award of attorneys' fees, expenses and costs incurred herein.

                                      **WITZEL KANZLER & DIMMITT, LLC**

                                      By:  /s/ Jay L. Kanzler Jr.
                                      Jay L. Kanzler Jr., #41298 (Mo.)
                                      Coren Brown #62767 (Mo.)
                                      2001 S. Big Bend Blvd.
                                      St. Louis, MO 63117
                                      314-645-5367
                                      314-645-5387(fax)
                                      jaykanzler@wkllc.com

                                      Attorneys for Plaintiffs